IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

|                    |   |                      |
|--------------------|---|----------------------|
| CARL BROWN,        | ◊ |                      |
|                    | ◊ |                      |
|     Plaintiff,     | ◊ |                      |
|                    | ◊ |                      |
| vs.                | ◊ | No. 09-2363-STA/cgc  |
|                    | ◊ |                      |
| UNITED STATES,     | ◊ |                      |
|                    | ◊ |                      |
|     Defendant.     | ◊ |                      |
|                    | ◊ |                      |

_____

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
(DOCKET ENTRY 14)
ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH
AND
ORDER ASSESSING APPELLATE FILING FEE

_____

I.    Procedural History

Plaintiff Carl Brown, Bureau of Prisons (BOP) inmate registration number 11534-076, an inmate at the Federal Correctional Institution ("FCI") in Memphis, Tennessee, filed this complaint under 28 U.S.C. §1361 and the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 2671-80. (Docket Entry ("D.E.") 1.) Plaintiff contends that medical staff at FCI Memphis have failed to properly treat his pre-existing back condition, causing pain and deterioration. Plaintiff seeks money damages and an order directing the United States to provide proper medical care or home confinement where he may consult with his own doctors.

On May 3, 2010, the United States of America filed a motion to dismiss or in the alternative, motion for summary judgment. (D.E.

14.)   Defendant contends Plaintiff has failed to produce expert evidence on the essential elements of his claim, specifically, what standard of care applied to BOP physicians and/or physicians assistants, how that standard was not met, and how the BOP physician's failure to comply with that standard injured Plaintiff. Defendant also contends that Plaintiff's request for injunctive relief must be denied because Plaintiff has failed to show any likelihood of success on the merits of his case or likelihood of irreparable harm.

Plaintiff responded to the motion on August 9, 2010.   (D.E. 19.)   Plaintiff disputes the affidavit of Defendant's expert, Dr. Nahem Naimey, contending that, because Naimey is a doctor at FCI Memphis, he is also a defendant.   Plaintiff adopts Defendant's statement of facts and relies on the medical records provided as an exhibit by Defendant, which he contends clearly establish his chronic and painful degenerative disease. Plaintiff contends that the Court should grant his request for injunctive relief and order Defendant to send him to a specialist because the specialist's evaluation would assist the Court in ruling on Plaintiff's claims.

II.   Undisputed Facts

A.   Plaintiff's Background

1.   Plaintiff is a federal inmate currently designated at the FCI, in Memphis, Tennessee. Plaintiff was sentenced on April 21, 1999, in the Western District of Tennessee to a 360-month sentence followed by a 8-year term of supervised release for Attempt to Possess with Intent to Distribute

Cocaine in violation of 21 U.S.C. § 846. <u>See</u> Exhibit 1, Declaration of Kevin Littlejohn, Attachment A. Assuming he earns all good conduct time projected, Plaintiff is scheduled to be released on March 29, 2024 via a good conduct time release.

2. Prior to this current sentence, Plaintiff was sentenced in the Western District of Tennessee on July 27, 1989 to a 10 year sentence for Conspiracy to Possess with Intent to Distribute Cocaine in violation of 21 U.S.C. § 846, and had been released on June 10, 1997, via a good conduct time release. <u>See</u> Exhibit 1.

3. Since returning to federal custody in 1999, the plaintiff has been designated to the FCI Memphis. <u>See</u> Exhibit 1.

4. Plaintiff alleges that medical staff at FCI Memphis have not properly treated him for continuing back pain. Specifically he states that medical staff have only given him pain medication and stretching exercises, while his back condition has been deteriorating. <u>See</u> Complaint, p. 3. He also states that a specialist has told his family that the cartilage in his lower spine has disintegrated over the years, and the bones in his lower spine are rubbing against his "sciatic nerve." <u>See</u> Complaint, Tort Claim attachment. Plaintiff requests a "declaratory injunction" ordering Defendant to provide him with proper medical care, or in the alternative to release him to home confinement; award him $5,000,000.00 to compensate him for the deterioration of his "intervertebra disc;" and to award him punitive damages. <u>See</u> Complaint, pp. 4-5.

B. <u>Plaintiff's Medical Record at FCI Memphis</u>

1. The following facts are taken from Plaintiff's medical record. <u>See</u> Exhibit 2, Declaration of Dr. Nahem Naimey, Attachment A.

2. On May 6, 1999, Plaintiff arrived at FCI Memphis and underwent a medical intake screening, where he reported a history of recurrent back pain.

3

3.  On April 28, 2000, Plaintiff reported to Health Services with complaints of low back pain for one week. He reported pulling a muscle while weightlifting. Plaintiff was examined and no abnormalities were found except for tenderness to the right lumbar area. Plaintiff had full range of motion, and his spine was noted to be straight and of normal strength. Plaintiff was prescribed pain medication, and was educated on lower back care.

4.  On November 11, 2000, Plaintiff received an injury assessment after falling in the kitchen. The examination noted the presence of tenderness across the thoracic and lumbar areas. However, Plaintiff had full range of motion, and no deformities were noted. He was given Ibuprofen and told that he should refrain from heavy lifting, recreation and sports for one week, take hot showers, and use Bengay ointment for comfort.

5.  On November 20, 2000, Plaintiff reported to Health Services with complaints of chronic lower back pain. Plaintiff reported he was a power lifter, hurt his back in 1993, and has experienced chronic lower back pain ever since. He noted that the medication Motrin stops his pain. The examination revealed no objective findings. Plaintiff received Motrin, and was counseled on lower back pain and ways to prevent it.

6.  On May 8, 2001, Plaintiff reported to Health Services to request more Motrin for his chronic lower back pain. He was provided Motrin, and also told to apply heat to his back and perform exercises to strengthen the lower back muscles.

7.  On June 4, 2002, Plaintiff reported to Health Services with complaints of back pain. Tenderness was noted at the lumbar area. Plaintiff was prescribed medication and an x-ray of the lumbar spine was ordered.

8.  On June 10, 2002, Plaintiff received an x-ray of his lumbar spine and on June 20, 2002, the results were received. The results showed a normal study, the vertebrae were well aligned, and showed no evidence of any fracture or destructive bone disease.

4

9.  On June 24, 2002, Plaintiff reported to Health Services complaining of low back pain after curling 40 pounds of weight from a standing extended position. Plaintiff was instructed to refrain from lifting weights due to his back problems. No objective findings were found, other than muscle tightness in the upper right back with some spasms present. Plaintiff was given a Robaxin injection and Naproxyn for the pain.

10. On February 13, 2003, Plaintiff reported to Health Services with complaints of chronic low back pain, requesting a Robaxin injection. It was noted that Plaintiff was still involved in doing sports and exercise, to include pushups, dips, stomach exercises, jumping jacks and stretches. No abnormal findings were noted other than mild tenderness in the lower lumbar/sacral area. He was denied the Robaxin injection and told to stop lifting weights and participating in sports.

11. On June 2, 2003, Plaintiff met with the Clinical Director to discuss his chronic back pain. He admitted to engaging in calisthenics, jogging, and other sports activities despite being advised against. A full examination was done, with no abnormal objective findings found. A lumber x-ray was ordered.

12. On June 2003, the final report for the lumber x-ray was received. It showed that the vertebrae were well aligned and showed no evidence of fracture or any destructive bone disease. The final impression was a normal study.

13. On February 13 and 20, 2004, Plaintiff reported to Health Services for back discomfort. A full examination was done, and no abnormalities except mild tenderness and some discomfort were found. Plaintiff was prescribed pain medication at these visits, and an x-ray of the cervical spine was ordered.

14. On March 17, 2004, the cervical spine x-ray results showed that the vertebrates were well aligned, but there was mild degenerative and hypertrophic changes. No significant findings were found. The

final impression is listed as mild degenerative changes.

15. On September 16, 2004, Plaintiff reported to Health Services for discomfort to the upper back, shoulder blade area, and right lower back. An examination was conducted and there were no abnormal findings. Plaintiff was given pain medication and an x-ray of the thoracic spine was ordered.

16. On September 23, 2004, the x-ray results showed no compressed vertebral bodies or subluxation. It was noted that degenerative osteophytes were found in the thoracic spine, but there were no destructive lesions. The exam was within normal limits.

17. Between September 23, 2004, and May 21, 2007, Plaintiff was seen in Health Services on approximately 16 occasions complaining of lower back pain, upper back pain, and neck and shoulder pain. Additionally, on February 13, 2007, Plaintiff received another x-ray of both the thoracic and cervical spine, neither of which showed any acute abnormality.

18. On June 28, 2007, Plaintiff was seen by the Clinical Director to evaluate his complaints of recurrent back pain and right shoulder pain. Plaintiff reported that the pain had been present in his lower back since 1993, when he injured himself while lifting 550 pounds. Plaintiff reported re-injuring his back and right shoulder in 2002, in another weight lifting incident. Plaintiff claimed his pain is located around the left shoulder area, low back, and along the hamstring area of the left thigh. He denied weakness, loss of sphincter control or parasthesias. Plaintiff stated he did not want to take anti-inflammatory drugs any longer because of the side effects. At this appointment, the Clinical Director noted that Plaintiff was a very well developed and muscular individual with excellent muscular definition. Plaintiff's musculature was noted to be without any muscle wasting and his muscle strength was normal. Plaintiff received a full examination and no abnormalities were noted. The Clinical Director ordered an MRI of the lower back.

6

19. On December 19, 2007, Plaintiff received an MRI of
the lumbar spine. The findings showed normal
alignment of the vertebra, decreased water signal
and slight loss of height of the L3 and L4
intervertebral disc. No disc herniation or canal
stenosis was found. The impression is mild
degenerative changes at the L3 and L4 discs.

20. Plaintiff continues to be seen at Health Services
to address his lower back pain issues. He has had
recent x-rays of his back in April and June 2009,
which were negative except for degenerative joint
disease/disc disease. Plaintiff also had another
MRI taken on September 4, 2009, which showed mild
disc space narrowing at C6/7 with mild paracentral
disc bulges. There was no evidence of cord or nerve
root compression to account for Plaintiff's
reported symptoms.

III. <u>Summary Judgment Standard</u>

Federal Rule of Civil Procedure 56(c) provides that summary
judgment "should be rendered if the pleadings, the discovery and
disclosure materials on file, and any affidavits show that there is
no genuine issue as to any material fact and that the movant is
entitled to judgment as a matter of law."  In reviewing a motion
for summary judgment, the court must view the underlying facts and
all inferences to be drawn therefrom in the light most favorable to
the non-moving party. <u>Matsushita Elec. Indus. Co. Ltd. v. Zenith
Radio Corp.</u>, 475 U.S. 574, 587 (1986); <u>see also  60 Ivy Street
Corp. v. Alexander</u>, 822 F. 2d 1432, 1435 (6th Cir. 1987). <u>See also
Kochins v. LindenAlimak, Inc.</u>, 799 F.2d 1128, 1133 (6th Cir. 1986).
There is no issue for trial unless there is sufficient evidence
favoring the nonmoving party for a jury to return a verdict for
that party; if the evidence is merely colorable or is not

7

significantly probative, summary judgment may be granted. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986). When ruling on a motion for summary judgment, mere existence of a scintilla of evidence in support of the plaintiff's position will not be sufficient; there must be evidence on which the jury could reasonably find for the plaintiff. <u>Id.</u>

Federal Rule of Civil Procedure 56(e)(2) further states that, "[w]hen a motion for summary judgment is made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must-by affidavits or as otherwise provided in this rule-set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party." Rule 56(e) requires the opposing party to go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986).

IV.   <u>Analysis</u>

Under the FTCA, "the district court applies local law to determine liability and to assess damages." <u>Kirchgessner v. United States</u>, 958 F.2d 158, 159 (6th Cir. 1992).

> The liability of the United States in actions under the Federal Tort Claims Act is governed by the law of the place where the alleged tort occurred. 28 U.S.C. §§ 1346(b), 2674. <u>Richards v. United States</u>, 369 U.S. 1 (1962). All of the acts in this case occurred in Tennessee; therefore [Tennessee law] is controlling.

<u>Ward v. United States</u>, 838 F.2d 182, 184 (6th Cir. 1988).  <u>See also</u>

<u>Cagle v. United States</u>, 937 F.2d 1073, 1074-75 (6th Cir. 1991).

In Tennessee, no claim for negligence can succeed in the

absence of any the following elements:

>    (1)   a duty of care owed by the defendant to the
>          plaintiff;
>    (2)   conduct falling below the applicable standard of
>          care amounting  to a breach of that duty;
>    (3)   an injury or loss;
>    (4)   causation in fact; and
>    (5)   proximate, or legal cause.

<u>Haynes v. Hamilton County</u>, 883 S.W.2d 606, 611 (Tenn. 1994).

Claims for medical malpractice in Tennessee are governed by

statute.  Tenn. Code Ann. § 29-26-115 states in part:

> (a) In a malpractice action, the claimant shall have the
> burden of proving by evidence as provided by subsection
> (b):
>
> (1) The recognized standard of acceptable professional
> practice in the profession and the specialty thereof, if
> any, that the defendant practices in the community in
> which the defendant practices or in a similar community
> at the time the alleged injury or wrongful action
> occurred;
>
> (2) That the defendant acted with less than or failed to
> act with ordinary and reasonable care in accordance with
> such standard; and
>
> (3) As a proximate result of the defendant's negligent
> act or omission, the plaintiff suffered injuries which
> would not otherwise have occurred.
>
> (b) No person in a health care profession requiring
> licensure under the laws of this state shall be competent
> to testify in any court of law to establish the facts
> required to be established by subsection (a), unless the
> person was licensed to practice in the state or a
> contiguous bordering state a profession or specialty
> which would make the person's expert testimony relevant

to the issues in the case and had practiced this profession or specialty in one (1) of these states during the year preceding the date that the alleged injury or wrongful act occurred. This rule shall apply to expert witnesses testifying for the defendant as rebuttal witnesses. The court may waive this subsection when it determines that the appropriate witnesses otherwise would not be available.

Tenn. Code Ann. § 29-26-115.

Expert witness testimony is necessary to establish that a physician violated the standard of reasonable care in a malpractice action. See Payne v. Caldwell, 796 S.W.2d 142 (Tenn. 1990)(holding plaintiff must prove the appropriate standard of care and a breach of that standard through competent expert testimony).  Plaintiff's medical records are in evidence.  Plaintiff has had an opportunity to obtain independent review of those records.  Plaintiff has not produced an expert affidavit or opinion establishing the requisite standard of care or any breach of that standard of care.  Where there is a complete absence of proof concerning the essential elements of a malpractice case, summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Plaintiff has failed to meet his burden to establish the essential elements of his case and the United States is entitled to summary judgment as a matter of law as to the claim of negligence or medical malpractice.  Because Plaintiff has failed to meet his burden to establish the essential elements of his case, he cannot demonstrate any likelihood of success on the merits or that he will suffer irreparable harm and is not entitled to injunctive relief.

10

The United States' motion for summary judgment (D.E. 14) is GRANTED. The Clerk shall enter judgment for the United States.


The next issue to be addressed is whether plaintiff should be allowed to appeal this decision in forma pauperis.  Twenty-eight U.S.C. § 1915(a)(3) provides that an appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith.

The good faith standard is an objective one.  Coppedge v. United States, 369 U.S. 438, 445 (1962).  In this case, for the reasons expressed above, there is no genuine issue of material fact as plaintiff has failed to establish the essential elements of his claim.  As reasonable jurists could not differ regarding this conclusion, the Court concludes that an appeal of this dismissal would not be taken in good faith.

It is therefore CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal in this matter by plaintiff is not taken in good faith, and plaintiff may not proceed on appeal in forma pauperis.

The final matter to be addressed is the assessment of a filing fee if plaintiff appeals the dismissal of this case.  The United States Court of Appeals for the Sixth Circuit has held that a certification that an appeal is not taken in good faith does not affect an indigent prisoner plaintiff's ability to take advantage of the installment procedures contained in § 1915(b).  McGore v.

Wrigglesworth, 114 F.3d 601, 610-11 (6th Cir. 1997).  McGore sets

out specific procedures for implementing the PLRA.  Therefore, the

plaintiff is instructed that if he wishes to take advantage of the

installment procedures for paying the appellate filing fee, he must

comply with the procedures set out in McGore and § 1915(b).


    IT IS SO ORDERED this 11th day of March, 2011.



                                **s/ S. Thomas Anderson**
                                S. THOMAS ANDERSON
                                UNITED STATES DISTRICT JUDGE